# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
# DIVISION OF ST. THOMAS AND ST. JOHN

| | | |
|---|---|---|
| THE GOVERNMENT OF THE VIRGIN ISLANDS, BUREAU OF INTERNAL REVENUE,<br>     Plaintiffs,<br>v.<br><br>WILLIAM M. LANSDALE, MARIANTHI LANSDALE, LA ISLA VIRGEN, INC., MARINA PACIFICA OIL COMPANY, INC., AND LONESOME DOVE PETROLEUM COMPANY,<br>     Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL NO. 2001/0157 |
| EDWARD E. THOMAS, DIRECTOR, VIRGIN ISLANDS BUREAU OF INTERNAL REVENUE,<br>     Petitioner,<br>v.<br><br>LONESOME DOVE PETROLEUM CO., and MARINA PACIFICA OIL COMPANY,<br>     Respondents | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL NO. 1992/0079 |

## MEMORANDUM OPINION

Finch, Senior Judge

  THIS MATTER comes before the Court on the Receiver's Motion for Asset Turnover and other Equitable Relief. Joanne E. Bozzuto, Third Successor Receiver of Lonesome Dove Petroleum Co. [hereinafter "Lonesome Dove"] and its predecessor corporations asks the Court to issue an order that gives Lonesome Dove title to all former Arlyne Lansdale oil, gas and mineral interests, with the sole exception of five properties reacquired by William Lansdale from Marina Pacifica Oil Company [hereinafter "Marina Pacifica"].

I.  **Factual Findings**

An evidentiary hearing was held on the Motion for Asset Turnover and other Equitable Relief on July 30, 2009. The Receiver submitted a written report with two binders of supporting exhibits. She testified concerning the sources and significance of the exhibits.

The Receiver established that, in May 1989, William Lansdale acquired all of his mother Arlyne Lansdale's oil, gas and mineral interests through an Order Approving Multi-Action Settlement Agreement [hereinafter "Consent Order"] that resolved litigation between Lansdale and his family over his late mother's assets. Binder II, Tab 1. Exhibits A and D to the Consent Order awarded Lansdale the assets described in 412 separate paragraphs. The Consent Order effectively transferred to Lansdale 296 federal and state oil and gas leases, identified by 97 sub-assets located on the leases, and 18 fee mineral interests.

In November 1989, Lansdale entered into an Assignment of Oil and Gas Leases which transferred oil and gas leases to Marina Pacifica. See Binder II, Tab 10, Assignment of Oil and Gas Leases, dated Nov. 13, 1989. Lansdale testified that the leases that he assigned he had inherited from his mother. Binder II, Tab 10, Lansdale Dep. 32:17-21. Such sale is also acknowledged in the signed Marina Pacifica minutes, dated November 13, 1989. Binder II, Tab 3.

The Assignment incorporates an Exhibit A, listing the interests assigned from Lansdale to Marina Pacifica. The Marina Pacifica minutes of November 13, 1989 also purport to attach an Exhibit A with legal description of the transferred property interests. The dispute between the Receiver and the Lansdales turns on the contents of these two exhibits, which are thought to be identical.

2

The Receiver introduced evidence that tends to show that Exhibit A of the Assignment constituted all of the oil, gas, and mineral interests that Lansdale had inherited from his mother, or, in other words, those interests listed on Exhibits A and D to the Consent Order. The Marina Pacifica 1990 and 1991 Forms 1120 U.S. Corporation Income Tax Returns reported all former Arlyne Lansdale oil and gas revenue as Marina Pacifica corporate income with the exception of the income from the five properties reacquired by Lansdale. Binder II, Tabs 11, 14. The Lansdales' individual income tax returns correlate with the Marina Pacifica returns in that they state that the oil royalty and working interest income is "attributable to Marina Pacifica Oil Company." Id. Other correspondences confirm that Lansdale transferred all of the former Arlyne Lansdale interests to Marina Pacifica in 1989, and later retained five properties. See e.g., Binder II, Tab 8, Ex. A, Letter from Stephen L. Newman, CPA to William Landale, dated Sept. 13, 1990 ("[Y]ou have relayed to us that of the A. Lansdale properties, five properties were retained by you").

The dispute in this matter revolves around the description of the assets that Lansdale inherited from his mother. However, at the evidentiary hearing, notwithstanding having had copies of these Exhibits and an accompanying Receiver's Report setting forth the Receiver's contentions since December 2007, Lansdale offered little to refute the Receiver's position that Exhibit A and D attached to the Consent Order appropriately described those assets. He referred the Court to Schedule "G" of the Estate of Arlyne Lansdale. Binder II, Tab 8.E.1. This schedule shows, as a separate line item, "355 non-producing Leasehold and/or Overriding Royalty interests, at $10.00 each," totaling $3,550. According to Lansdale, he did not convey such interests to Marina Pacifica.

The Court finds Schedule "G" to be unpersuasive since it does not specify the leases to which it refers and is outdated, since Arlyne Lansdale died on August 13, 1986 and the transfer occurred over three years later. The overwhelming evidence shows that Lansdale assigned all of the interests he had inherited from his mother to Marina Pacifica on November 13, 1989, although formal transfer still had to be completed. The former Arlyne Lansdale interests, those listed in Exhibit A and D of the Consent Order, were included as the true Exhibit A of the November 13, 1989 Assignment. All of the interests listed on Exhibit A and D of the Consent Order were assigned to Marina Pacifica. The Receiver and Lansdale agree that in 1990, Lansdale reacquired five specified properties from Marina Pacifica.

In 1991, the District Court of the Virgin Islands entered an Order determining income tax deficiencies in excess of $21 million owed by Marina Pacifica's predecessor La Isla Virgin. In 1992, Lansdale began preparing and recording Assignments to reflect his November 1989 sale of the former Arlyne Lansdale interests to Marina Pacifica. However, the list of assets, referred to as "Defendants' 1992 Exhibit A," that he acknowledged as having been received from his late mother, excluded many of the most valuable former Arlyne Lansdale oil, gas and mineral interests. Lansdale deliberately concealed the content of Exhibit A to the Assignment. Lansdale also failed to record the assignments of a number of the assets that were listed on Defendants' 1992 Exhibit A.

Marina Pacifica merged into Lonesome Dove in March 1992. Lonesome Dove was placed into receivership on September 15, 1992 so that the assets of Lonesome Dove could be used to satisfy Lonesome Dove's tax obligation to the Virgin Islands Bureau of Internal Revenue.

The First Receiver sued Lansdale and his wife. However, despite extensive discovery

and investigation, the First Receiver was unable to discover the inherited oil and gas assets that Lansdale was holding in his name, but that rightfully belonged to Lonesome Dove. Although the First Receiver conducted "extensive discovery and investigation, including obtaining records of the Estate of Arlene Lansdale," there is no indication that such effort brought the Consent Order to light. Civil No. 92-79, [Docket No. 293, Exhibit C](), Final Report of Receiver for Period Ending January, 1997.

Lansdale hid the scope of the inherited assets from the First Receiver. On January 11, 1994, Lansdale testified at a deposition taken by the First Receiver that an abbreviated list of oil and gas interests constituted all of the oil and gas assets inherited from his mother:

> [First Receiver]: So you're saying, then, that this is the list of the oil and gas leases owned by the company transferred by you to the company in 1989, and there are no other leases?
> [Lansdale]: That's correct.

Binder II, Tab 10, 33:18-22.

Over the next ten years, despite the efforts of the First Receiver and his successors, Lansdale never revealed an accurate list of the assets that he had agreed to transfer to Marina Pacifica. In fact, he continued to misrepresent that the transfer of all such assets had been completed. In a sworn May 23, 2003 Declaration, Lansdale stated that "Marina's 1989 purchase of the oil and gas wells [he] inherited from [his] mother" . . . "remain in the Receiver's possession today" and that "the Receiver collected and continues to collect oil and gas revenues of the corporation, from the well interests that [he] inherited and then transferred to Marina." Binder I, Ex. F, Tab 4, ¶¶ 45, 47. It was not until April of 2004, when the Receiver obtained a copy of the Consent Order from the recorder's office in Eddy Count, New Mexico, that the

5

Receiver discovered the full extent of Lansdale's inheritance from his mother.

In her Motion for Asset Turnover, the Receiver seeks to obtain the titles to and diverted revenue from the remaining oil, gas, and mineral interests that Lansdale had sold to Marina Pacifica in 1989, except for the five properties that Lansdale reacquired.

## II. Conclusions of Law

### A. Threshold Issues

#### 1. Statute of Limitations

Lansdale contends that the statute of limitations has run, barring the Receiver from prevailing on her Motion for Asset Turnover. The Receiver is constrained to the extent that the corporation Lonesome Dove would be barred from recovering the assets in question under the statute of limitations. See Allen v. Ramsay, 4 Cal. Rptr. 575, 583 (Cal. Ct. App. 1960) ("A receiver occupies no better position than that which was occupied by the person or party for whom he acts and the receiver takes the property and the rights of one for whom he was appointed in the same condition and subject to the same equities as existed before his appointment and any defense good against the original party is good against the receiver.")

Lansdale asks that the Court apply California law to the Receiver's "claims." He relies on the Court's earlier statement that "[t]he Lansdales' relationships with Marina Pacifica and Lonesome Dove are governed respectively by California Law and Texas law." Government of Virgin Islands, Bureau of Internal Revenue v. Lansdale, 172 F. Supp.2d 636, 647 (D.V.I. 2001). Although Lansdale entered into an agreement with Marina Pacifica to sell the former Arlyne Lansdale assets, such agreement is now being enforced by Marina Pacifica's successor,

Lonesome Dove. Without further briefing, it is not readily apparent to the Court whether California or Texas law should apply. However, since Lansdale argues in favor of applying California law, and the Receiver does not contest Lansdale's position, the Court will apply California law with regard to the statute of limitations issue.

A defendant who, by fraud or deceit, conceals material facts and makes misrepresentations to "hinder[] the plaintiff from bringing an action within the statutory period, is estopped from taking advantage of his own wrong." Pashley v. Pacific Elec. Co., 153 P.2d 325, 328 (Cal. 1944). Fraudulent concealment halts the statute of limitations when there is "active conduct by a defendant, above and beyond the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time." Santa Maria v. Pacific Bell, 202 F.3d 1170, 1177 (9th Cir. 2000).

The purpose of the judicially created fraudulent concealment doctrine is "to disarm a defendant who, by his own deception, has caused a claim to become stale and a plaintiff dilatory." Regents of Univ. of Cal. v. Superior Court, 976 P.2d 808, 822 (Cal. 1999). "The statute of limitations was intended as a shield for [the defendant's] protection against stale claims, but he may not use it to perpetrate a fraud upon otherwise diligent suitors." Pashley, 153 P.2d at 328.

In California, "suspicion of wrongdoing does not foreclose application of the fraudulent concealment doctrine." Migliori v. Boeing North American, Inc., 114 F. Supp.2d 976, 984 (C.D. Cal. 2000). "[T]he question is not whether a plaintiff was on notice of some wrongdoing. Instead, the question is whether the plaintiff had knowledge of facts, or should have known about facts, that placed him or her on notice of the specific cause of action." Id.

7

Notice does not "mean a simple suspicion of wrongdoing." Id. "[H]ints, suspicions, hunches or rumors . . . that require[] a plaintiff to make inquiries in the exercise of due diligence, but not to file suit," do not constitute notice. Id. at 984-85 (quotation omitted). Notice "refer[s] to an awareness of sufficient facts to identify a particular cause of action, be it a tort, a constitutional violation or a claim of fraud." Id. (quotation omitted).

"[W]hen the defendant is guilty of fraudulent concealment of the cause of action the statute [of limitations] is deemed not to become operative until the aggrieved party discovers the existence of the cause of action." Pashley, 153 P.2d at 327. "Notwithstanding a defendant's continuing efforts to conceal, if plaintiff discovers the claim independently, the limitations period commences." Sanchez v. South Hoover Hospital, 553 P.2d 1129, 1134 (Cal. 1976). Tolling of a claim also ends when the plaintiff, "by the exercise of reasonable diligence, should have discovered it." Id.

The Receiver has submitted evidence that Lansdale concealed as well as actively and intentionally misrepresented the scope of the assets which he had inherited from his mother and sold to Marina Pacifica. His 1994 deposition testimony and 2003 Declaration amount to intentional misrepresentations. During the entire period until the Receiver discovered the full extent of the sale to Marina Pacifica, Lansdale actively concealed the assets. Not until April 2004 did the Receiver obtain the Consent Order, that listed the oil, gas and mineral interests that Lansdale inherited from Arlyne Lansdale and that Lansdale agreed to transfer to Marina Pacifica. On December 28, 2007, within four years of her receipt of the Consent Order, the Receiver filed her Motion for Asset Turnover and other Equitable Relief.

Lansdale states that, although the Receiver has never specified the theory under which she

proceeds, he considers that her primary cause of action sounds in contract. The California statute of limitations for "[a]n action upon contract, obligation or liability founded upon an instrument in writing" is four years. Cal. Code Civ. P. § 337. Therefore, if the Court were to find that the statute was tolled until April 2004 when the Receiver first had evidence of the extent of Lansdale's inheritance from his mother, the Receiver's Motion for Asset Turnover would be timely.

If the Court were reviewing the statute of limitations solely as a pretrial matter on Lansdale's summary judgment motion, it would find a genuine issue of material fact as to the date that the Receiver discovered the existence of the breach of contract cause of action. However, this matter has gone beyond the summary judgment stage to a summary proceeding on the asset turnover motion. Because the statute of limitations is an affirmative defense, Lansdale had the burden of proving, by a preponderance of the evidence, that the Receiver's motion is time-barred. See Samuels v. Mix, 989 P.2d 701, 706 (Cal. 1999) (holding that "defendant must prove the facts necessary to enjoy the benefit of a statute of limitations").

Lansdale has failed to prove that the present Receiver, or any of the previous Receivers, had any more than a suspicion that he was withholding the true extent of the assets inherited from his mother. Lansdale has not refuted the evidence that tends to show that the Receivers' suspicion did not ripen into facts that would establish a cause of action until April 2004, due to Lansdale's active concealment and intentional misrepresentations. Thus, this Court finds that Lansdale has not established, by a preponderance of the evidence, that the Motion for Asset Turnover is barred by the applicable statute of limitations.

2. Statute of Frauds

Lansdale contends that this matter is barred by the statute of frauds. Lansdale complains that no document was introduced at the hearing purporting to assign all the oil and gas interests included in Exhibit A and D of the Consent Order.

Lansdale does not deny that he entered into a written contract, an assignment, transferring certain interests that he inherited from his mother to Marina Pacifica, and that such assignment incorporated a detailed list of such interests. Thus, the statute of frauds is satisfied. When an original cannot be produced because it is lost or destroyed, "other evidence of the contents of a writing" is admissible under Rule 1004 of the Federal Rules of Evidence.

3. Arbitration

Lansdale repeats his contention that the issue of the ownership of these assets should be decided in arbitration. The Court has reviewed the Demand for Arbitration and Request to Stay Pending Arbitration that Lansdale filed on October 27, 2004. Civil No. 01-157, Docket No. 240. Notwithstanding the title of this pleading, the Court does not consider it to be a request that this Court compel arbitration of any issue in this matter. This pleading appears to be a demand directed at the Virgin Islands Bureau of Internal Revenue and does not seek Court action other than to stay this proceeding once arbitration has been commenced. Lansdale has never filed a motion to compel arbitration.

B. The Merits

In 1989, Lansdale agreed to transfer to Marina Pacifica all of the former Arlyne Lansdale oil and gas interests, and mineral interests. That agreement was modified in 1990 to allow

10

Lansdale to retain five of such properties. Lansdale has transferred some, but not all of the non-retained inherited interests to Lonesome Dove. Lansdale admits that some of the interests that he has failed to transfer are rightly the property of Lonesome Dove. However, since September 1992, he has diverted and concealed revenue from certain properties that he has not acknowledged and intentionally misrepresented as not being held for the benefit of Lonesome Dove.

The Receiver has proven, by a preponderance of the evidence, that the former Arlyne Lansdale oil, gas and mineral interests are documented in Exhibit A and D to the Consent Order. These are the assets that Lansdale agreed to convey to Marina Pacifica. Thus, Lansdale is obligated to transfer to Lonesome Dove, all the oil, gas and mineral interests listed in Exhibits A and D, of the Consent Order, except for those pertaining to his five retained properties. All revenue received from such interests, but not turned over to Lonesome Dove, since September 1992, must also be turned over to the Receiver.

**III.   Conclusion**

For the foregoing reasons, the Court grants the Motion for Asset Turnover and other Equitable Relief.

ENTER:

DATE:   October 5, 2009               _____/s/_____
                                      RAYMOND L. FINCH
                                      SENIOR DISTRICT JUDGE